UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>GLENN J. WALTERS,<br>defendant. | CRIMINAL NO. 03CR 10308 MLW<br>VIOLATIONS:<br>18 U.S.C. §1344 (Bank Fraud) |

INFORMATION

The United States Attorney charges:

GENERAL ALLEGATIONS

1. At all times material to this Information, defendant GLENN J. WALTERS was a resident of Duxbury, in the District of Massachusetts. WALTERS was Chief Executive Officer and a major shareholder of Advanced Deposition Technologies, Inc.

2. At all times material to this Information, Advanced Deposition Technologies, Inc. ("ADT"), was a Delaware corporation with its principal place of business at Miles Standish Industrial Park in Taunton, Massachusetts. ADT was in the business of developing, selling and licensing products and technology in the field of applying thin metallic coatings to plastic films and other surfaces.

3. At all times material to this Information, the Boston branch of National Bank of Canada (the "Bank") was a branch and agency of a foreign bank (as defined in paragraph (1) of Section 1(b) of the International Banking Act of 1978) and, as such, was a financial institution as defined in Title 18, United States Code, Section 20.

I hereby certify that the foregoing document is true and correct copy of the
electronic docket in the captioned case
electronically filed original filed on
original filed in my office on 7-30-03
By:
Deputy Clerk

ADT'S BANK LOANS

4. Beginning on or about July 8, 1996, and continuing thereafter, the Bank extended entered into a commercial loan arrangement with ADT pursuant to written contracts, collectively known as a Revolving Credit and Term Loan Agreement.

5. On or about October 20, 2000, ADT and the Bank entered into an Amended and Restated Revolving Credit and Term Loan Agreement, in connection with the commercial loan arrangements between the Bank and ADT.

6. Under the Bank's loan agreements, ADT was able to borrow amounts up to a maximum $2,000,000 under borrowing formulas that allowed ADT to borrow as much as 80% of the value of ADT's eligible accounts receivable.

7. Under the Bank's loan agreements, ADT was required to submit to the Bank reports, known as Borrowing Base Certificates, reflecting the status of its loan and reflecting changes to its accounts receivable.

THE SCHEME TO DEFRAUD

8. Between in or about December 2000 and March 2001, defendant Walters devised and executed, and caused others to assist in the execution of, a scheme to defraud the Bank and to obtain loan money from the Bank by means of false and fraudulent pretenses, representations and promises.

9. Defendant WALTERS's scheme consisted of knowingly causing false and fraudulent Borrowing Base Certificates to be submitted to the Bank that overstated the value of ADT's accounts receivable, enabling ADT wrongfully to borrow from the Bank amounts far in excess of what ADT would have been allowed to borrow if the value of its accounts receivable had been reported accurately.

10. In order to fraudulently inflate the value of ADT's accounts receivable, Walters created, and caused others to create, phony documents that purported to reflect licensing fee agreements between ADT and certain customers. The documents indicated that ADT had entered into technology licensing agreements with these customers and that the customers owed ADT

licensing fees under those agreements. In reality, the licensing agreements had not been completed and the customers did not owe ADT the sums of money reflected in the phony documents. By causing these non-existent licensing fees to be entered into the books and records of ADT as if the customers actually owed the money, Walters fraudulently inflated ADT's accounts receivable.

## EXECUTION OF THE SCHEME TO DEFRAUD

11. On or about December 8, 2000, Walters caused an ADT invoice to be created and entered in ADT's accounting system, which purported to reflect payments due for a "license to laminate and sell our European patented Safety Susceptor" of $75,000 to be paid by Henry & Leigh Slater Ltd. In actuality, as Walters well knew, no such licensing agreement had been completed.

12. On or about December 22, 2000, Walters caused an ADT invoice to be created and entered in ADT's accounting system, which purported to reflect an "exclusive licensing up front fee" of $300,000 to be paid by Precise Exercise Equipment, Ind. to ADT. In actuality, as Walters well knew, no such licensing agreement had been completed.

13. On or about December 29, 2000, Walters caused an ADT invoice to be created and entered in ADT's accounting system, which purported to reflect an "exclusive technology license" fee of $200,000 to be paid by Darly Custom Technology, Inc. to ADT. In actuality, as Walters well knew, no such licensing agreement had been completed.

COUNT ONE

(Bank Fraud, 18 U.S.C. §1344)

14. The United States Attorney repeats and incorporates by reference the allegations in paragraphs 1-13 of this Information and further charges:

15. From in or about December 2000 to on or about March 26, 2001, at Taunton and elsewhere, in the District of Massachusetts,

**GLENN J. WALTERS,**

defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud a institution, and to obtain and attempt to obtain monies, funds and credits owned by and under the custody and control of a financial institution, by false and fraudulent pretenses, representations and promises, to wit: by causing documents reflecting fraudulently inflated accounts receivable to be created and submitted to National Bank of Canada and its employees in connection with a lending agreement between National Bank of Canada and Advanced Deposition Technologies, Inc.

All in violation of Title 18, United States Code, Sections 1344 and 2.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: September 30, 2003

By:

PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147